```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

COURTNEY ANTHONY DONALDSON     §
                               §
     Plaintiff,                §
                               §
vs.                            §   Civil Action No. H-04-911
                               §
UNITED STATES OF AMERICA,      §
                               §
     Defendant.                §
```

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Docket Entry No. 18) and Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 19). For the reasons discussed below, Defendant's Cross-Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

### I.  Statement of the Case

Plaintiff, a citizen of Jamaica, entered the United States as a resident alien on September 20, 1984, at the age of 14. Plaintiff filed the present action pursuant to 8 U.S.C. § 1421(c), seeking *de novo* review of the U.S. Department of Homeland Security, Citizenship and Immigration Services's ("CIS") denial of his naturalization application. Two issues must be resolved by the court: First, whether an immigration judge's decision in another proceeding, that Plaintiff's drug conviction post-dated November 29, 1990, is binding on this court, and second, if not, whether, as

---

[1] On June 29, 2004, the parties consented to disposition of this case pursuant to 28 U.S.C. § 636(c). See Docket Entry No. 15.

a matter of law, that conviction disqualifies Plaintiff from naturalization.

### A. The Conviction

On April 20, 1989, Plaintiff was indicted for possession of marijuana, five to fifty pounds, in Chambers County, Texas.[2] On November 13, 1990, a jury returned a verdict of guilty. Plaintiff elected to be sentenced by the court. On January 9, 1991, the court granted Plaintiff deferred adjudication of guilt and placed him on probation for ten years.[3] Plaintiff was discharged from probation on August 17, 1994.[4]

### B. The First Naturalization Application

On January 21, 1997, Plaintiff filed his first application for naturalization.[5] On March 5, 2001, Plaintiff appeared before an immigration agent, who determined that Plaintiff's conviction both disqualified him from admission to citizenship and made him subject to removal from the United States as an alien convicted of a controlled substance offense.[6] A Notice to Appear was issued that

---

[2] See Docket Entry No. 17, Administrative Record (hereinafter "AR") p. 263-64.

[3] AR p. 265.

[4] AR pp. 269, 271.

[5] AR p. 296.

[6] AR p. 242.

same date, placing Plaintiff in removal proceedings based on the conviction.[7] An Amended Notice to Appear was issued on September 28, 2001, adding as an additional ground for removal that Plaintiff's conviction was also an aggravated felony which occurred after November 29, 1990.[8] According to the government, Plaintiff was convicted, as that term was defined by 8 U.S.C. § 1101(a)(48), on January 9, 1991, when the judge ordered him placed on deferred adjudication probation.[9]

In response, Plaintiff urged the immigration judge to apply a "relation back" analysis to find that the date of conviction was November 13, 1990, not January 9, 1991. Plaintiff sought to have the removal proceeding terminated pursuant to 8 C.F.R. § 239.2(f)[10]

---

[7] AR p. 254.

[8] AR p. 228. November 29, 1990, was significant because it was the effective date of the Immigration Act of 1990, Pub. L. 101-649, which provided, in part, that an applicant for naturalization could not satisfy the "good moral character" requirement if convicted of an aggravated felony.

[9] The government also amended the Notice to Appear to reflect that Plaintiff was convicted on January 9, 1991, not November 13, 1990, as previously alleged. See AR p. 96.

[10] That subsection provided:

> Termination of removal proceedings by immigration judge. An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors. In every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 C.F.R. § 239.2(2001). That subsection was deleted on June 13, 2003, see 68 Fed. Reg. 35276. It now appears without substantive change at 8 C.F.R. §

in order to pursue his request for immediate naturalization.[11]  The INS opposed this motion, arguing that Plaintiff was unable to show a prima facie eligibility for naturalization, a requirement of 8 C.F.R. § 239.2(f), because his conviction rendered him unable to satisfy the requisite "good moral character" definition of 8 C.F.R. 316.10(b)(1)(ii).[12]  The government also moved to pretermit Plaintiff's application for a waiver pursuant to former section 212(c) of the Immigration and Nationality Act ("section 212(c)").[13]

On April 24, 2002, the immigration judge denied Plaintiff's motion to terminate the removal proceedings, finding that Plaintiff had been convicted of an aggravated felony after November 29, 1990, making him ineligible for naturalization.  The immigration judge denied the government's motion to pretermit on the basis that INS v. St. Cyr, 533 U.S. 289 (2001), would permit Plaintiff to apply for relief from removal because he had been eligible for section 212(c) relief at the time of his conviction in 1991.

---

1239.2(f).  68 Fed. Reg. 9838, Feb. 28, 2003.

[11] AR pp. 159-62.

[12] That regulation provided that an applicant "shall be found to lack good moral character, if the applicant has been. . . [c]onvicted of an aggravated felony as defined in section 101(a)(43)[codified at 8 U.S.C. § 1101(a)(43)] of the Act on or after November 29, 1990."

[13] Section 212(c) was codified at 8 U.S.C. § 1182(c)(repealed 1996, Pub. L. 104-208, Div. C, Title III, § 304(b), 110 Stat. 309, 3597 (1996). In spite of that section's repeal, the Supreme Court in INS v. St. Cyr, 533 U.S. 289 (2001), permitted an applicant who had pleaded guilty to a disqualifying crime prior to that statute's repeal, to apply for a section 212(c) waiver.

On September 20, 2002, the immigration judge granted Plaintiff's application for section 212(c) relief and the removal proceeding was terminated.[14] The result was that Plaintiff was found to be ineligible for relief under 8 C.F.R. § 239.2(f) because the conviction made him unable to show a prima facie eligibility for naturalization but Plaintiff was permitted to remain in the United States as a legal resident because he was eligible for relief under section 212(c).

Both parties reserved their rights to appeal. Eventually, the parties agreed that if Plaintiff withdrew his appeal of the determination that Plaintiff was convicted of a disqualifying aggravated felony, the government would agree not to appeal the grant of section 212(c) discretionary relief. This agreement was formalized in October 2002 in a stipulation signed by both parties, accepting the immigration judge's determinations as final.[15]

### C. The Second Naturalization Application

On November 26, 2001, Plaintiff filed a second application for naturalization.[16] Three days later, he petitioned the Immigration and Naturalization Service ("INS") to terminate his removal proceedings which had resulted from his first naturalization

---

[14] AR p. 88.

[15] AR p. 77.

[16] AR pp. 50-52.

application, as discussed, supra.[17]

On February 6, 2003, Plaintiff was examined for his qualifications for citizenship.[18] On February 8, 2003, the examining officer denied Plaintiff's application for citizenship finding that Plaintiff's January 9, 1991, drug conviction rendered him ineligible for naturalization.[19] Plaintiff has exhausted his appellate administrative remedies, allowing him to seek judicial review of this adverse determination.

## II. Standard of review

This court has jurisdiction to review the denial of an application for naturalization. 8 U.S.C. § 1421(c). That section provides that the review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law. The parties have each moved for summary judgment, arguing that as a matter of law, their legal position should prevail. The court agrees that there are no material facts in dispute and that this matter may be determined by summary judgment.

## III.  Analysis

A naturalization applicant must demonstrate, among other things, that he is of good moral character during the time he has

---

[17] AR. pp. 159-62.
[18] AR pp. 50-54.
[19] AR pp. 47-48.

been lawfully admitted for permanent residence.  See 8 U.S.C. § 1427(a)(3)("during all the periods referred to in this subsection has been and still is a person of good moral character").  The applicant bears the burden of establishing his eligibility for citizenship.  INS v. Pangilinan, 486 U.S. 875, 884 (1988).

The statutory period which is to be judged is the five years immediately preceding the date of filing the naturalization application, up through the time of admission to citizenship.  8 U.S.C. § 1427(a)(1) and (2).  In spite of that apparent limitation, 8 U.S.C. § 1427(e) provides in relevant part:

> In determining whether the applicant has sustained the burden of establishing good moral character . . . the Attorney General **shall not be limited to the applicant's conduct during the five years preceding the filing of the application**, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.  (emphasis added)

8 U.S.C. § 1101(f) defines good moral character by precluding that determination if certain conduct has occurred.  Relevant to the present case is 8 U.S.C. § 1101(f)(8), which provides that "one who at any time has been convicted of an aggravated felony," is not a person of good moral character.

Title 8 U.S.C. § 1101(a)(43)(B)[20] defined "aggravated felony" as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as

---

[20]This section is also referred to as section 101(a)(43) of the Immigration Act of 1990, Pub. L. 101-649, effective November 29, 1990.

7

defined in section 924(c) of Title 18)."  That definition was applicable to convictions[21] which occurred after the effective date of the law, November 29, 1990.  If Plaintiff had been convicted of an aggravated felony after that date, he was disqualified from seeking naturalization.

### a.  Res judicata

The government urges the court to find that res judicata precludes Plaintiff from relitigating the immigration judge's determination that his conviction occurred after November 29, 1990.

Plaintiff counters that, because the immigration judge characterized his conviction in the context of Plaintiff's motion to terminate the removal hearing in order to pursue his request for immediate naturalization and could not actually adjudicate his naturalization petition, the immigration judge's determination that the conviction was disqualifying and occurred after November 29, 1990, is not binding on Plaintiff or this court.

The Supreme Court has recognized that, "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." U.S. v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966).

---

[21] The term "conviction" was not defined until six years later, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),  8 U.S.C. § 1101(a)(48).

In <u>Medina v. INS</u>, 993 F.2d 499 (5th Cir. 1993), Medina, a resident of Mexico whose father was a U.S. citizen by virtue of his birth in Texas, applied for a certificate of citizenship. <u>Medina</u>, 993 F.2d at 500-01. The INS began exclusion proceedings. In that proceeding, the INS conceded that Medina had qualified as a citizen and waived appeal. <u>Medina</u>, 993 F.2d at 501. The immigration judge issued an order admitting Medina to the United States as a citizen. <u>Id.</u>

Years later, the INS issued an order for Medina to show cause why he should not be deported as an alien, who, at the time of entry into the United States, was not in possession of valid entry documents. <u>Id.</u> The immigration judge found that Medina's sworn testimony in the first proceeding was more convincing than Medina's live testimony in the second proceeding, concluded that Medina had not been present in the United States for the requisite two year period, and stripped him of his citizenship. <u>Id.</u> The Board of Immigration Appeals affirmed, finding that res judicata did not bar the second proceeding when the first forum had applied the wrong legal standard. <u>Id.</u>

The Fifth Circuit reversed, finding that res judicata was applicable to administrative determinations on both legal and factual issues. <u>Medina</u>, 993 F.2d at 503-04. There, the court stated that the critical factor in determining whether res judicata applied was whether the original case was adjudicatory or non-

adjudicatory.  Id.  If it was adjudicatory, it had "the authority of a thing adjudged" to the same extent as matters litigated in a court of law.  Id.  The court stated:

> "The only considerations for the purposes of res judicata are whether (1) the case in which the valid, final judgment was rendered involved the same parties and issues, and (2) there was an opportunity to reach the merits on those issues."

Medina, 993 F.2d at 504.

Applying these considerations to the present case, the court concludes that the prior case was adjudicatory in nature, involved the same parties, and the same issue - that is, whether Plaintiff's conviction pre-dated or post-dated November 29, 1990.  The immigration judge determined, on the merits, that Plaintiff was convicted of a disqualifying aggravated felony after November 29, 1990.  That determination became final upon Plaintiff's agreement not to appeal in exchange for the government's agreement not to appeal the section 212(c) determination.[22]  Consequently, the court finds that res judicata bars Plaintiff from relitigating this finding in either his second naturalization hearing or before this court.  Even if the court were to agree with Plaintiff that res judicata is not applicable here, a *de novo* review of the denial of

---

[22] Plaintiff certainly benefitted from his agreement not to appeal the immigration judge's determination that his conviction occurred after November 29, 1990, because it made final a favorable ruling that he was entitled to relief under section 212(c) and would not be deported.  The government had argued that Plaintiff was not entitled to that relief under the retroactivity analysis of St. Cyr v. INS because Plaintiff, unlike St. Cyr, had not pleaded guilty in reliance on the availability of section 212(c) relief, but had gone to trial and had been found guilty by a jury.

Plaintiff's naturalization petition would have the same result.

### b. **Plaintiff's conviction is disqualifying**

The statutory prerequisites to naturalization are very clear. An applicant bears the burden of proving good moral character. As discussed above, an applicant is precluded from proving his good moral character if he has been convicted of an aggravated felony after November 29, 1990. See 8 U.S.C. §§ 1101(a)(43)(B), 1101(a)(48), and 1101(f)(8). Plaintiff concedes that his crime is an aggravated felony[23] but challenges the date of conviction.

Prior to 1996, there was no statutory definition of "conviction." Many courts, including the Fifth Circuit, construing the applicable state law, determined that deferred adjudication was not a "conviction" for purposes of federal immigration law.[24]

This changed on September 30, 1996, when the IIRIRA was enacted. The IIRIRA, 8 U.S.C. § 1101(a)(48), defined "conviction" as:

> [A] formal judgment of guilt of the alien entered by a court **or, if adjudication of guilt has been withheld, where**
>
> > (i) **a judge or jury has found the alien guilty** or

---

[23]

In addition, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") amended Section 1101(a)(43), which defined "aggravated felony," to add the following language:

> Not withstanding any other provision of law (including any effective date), the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after September 30 1996.

[24]

See Zamora-Morel v. INS, 905 F.2d 833, 839 n.3 (5th Cir. 1990).

11

>     the alien has entered a plea of guilty or nolo contendere
>     or has admitted sufficient facts to warrant a finding of
>     guilt, **and**
>
>     (ii) **the judge has ordered some form of punishment, penalty,
>     or restraint on the alien's liberty to be imposed.**

Plaintiff was found guilty by a jury, satisfying 8 U.S.C. § 1101(a)(48)(A)(i), and the judge ordered a restraint on his liberty by imposing a ten-year term of deferred adjudication probation, satisfying 8 U.S.C. § 1101(a)(48)(A)(ii). The court concludes that the date of conviction was January 9, 1991, when both conditions of that section 1101(a)(48)(A) were met.

In a similar case, Moosa v. INS, 171 F.3d 994, 1006, (5th Cir. 1999), the Fifth Circuit held that Section 1101(a)(48)(A)'s definition of "conviction" could be retroactively applied to a 1990 Texas deferred adjudication, even though the law at the time did not consider a deferred adjudication to be a conviction for purposes of immigration law.[25] The court found that "it is well-settled that Congress has the authority to make past criminal activity a new ground for deportation." Moosa, 171 F.3d at 1009, (citing Ignacio v. INS, 955 F.2d 295, 298 (5th Cir. 1992)).

The court finds that the case cited by Plaintiff in support of application of a relation back principle, Scarborough v. Principi, 541 U.S. 401, 124 S.Ct. 1856 (2004), to be inapposite. There, the Court applied Fed. R. Civ. P. 15(c)(2)'s relation back regime to a

---

[25] See Matter of Ozkok, 19 I & N Dec. 546, 549-50 (BIA 1988); Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990).

fee application under the Equal Access to Justice Act, where the original application for fees had failed to make the required "no substantial justification" allegation, and an amended application was filed outside the thirty-day filing window. Scarborough, 124 S.Ct. at 1868. The Court found that the amended application "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in the initial application. Id. The Court stated, "Just as failure initially to verify a charge or sign a "pleading, written motion, [or] other paper," Fed. R. Civ. P. 11(a), was not fatal to the petitioners' cases in Edelman[26] and Becker,[27] so here, counsel's initial omission of the assertion that the Government's position lacked substantial justification is not beyond repair." Id.

None of the cases cited by Plaintiff found the relation back doctrine applicable to override the express terms of a statute, but simply permitted certain pleading requirements to be amendable and certain time limits to be non-jurisdictional.

In light of this clear statutory language and case law upholding the retroactive application of the statute to deferred adjudications entered prior to the IIRIRA's enactment, the court

---

[26] See Edelman v. Lynchburg College, 535 U.S. 106 (2002)(applying the relation back doctrine to allow amendment of a Title VII charge).

[27] See Becker v. Montgomery, 532 U.S. 757 (2001)(finding that a pro se litigant's failure to hand sign a timely filed notice of appeal was a curable defect).

declines to fashion a "relation back" exception to the statutory bar where a finding of guilt and sentencing straddle the November 29, 1990, date.

Plaintiff's equal protection argument is foreclosed by Madriz-Alvarado v. Ashcroft, 383 F.3d 321 (5th Cir. 2004). There, Madriz pled guilty to possession of LSD. Madriz-Alvarado, 383 F.3d at 323. The court placed him on five years probation under community supervision but withheld "adjudication of guilt." Id. Madriz was later discharged from community supervision. Like Plaintiff here, Madriz argued that his Texas deferred adjudication was not a "conviction" under the immigration laws. The court disagreed, and found that section 1101(a)(48)(A) could not be more clear in its definition of "conviction" which included Madriz's deferred adjudication probation. Madriz-Alvarado, 383 F.3d at 331.

Madriz alternatively contended that even if his deferred adjudication was a conviction as a matter of statutory construction, the equal protection component of the Fifth Amendment required a contrary finding because a deferred adjudication under state law met the statutory definition of a conviction, while a federal deferred adjudication did not. Madriz-Alvarado, 383 F.3d at 332. The court found that Congress had the broad power to pass legislation concerning the admission or exclusion of aliens. Id. Differential treatment "must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts

14

that could provide a rational basis for the classification." Madriz-Alvarado, 383 F.3d at 332, quoting FCC v. Beach Comm., 508 U.S. 307 (1993). The court concluded that Congress could have thought that aliens whose criminal charges resulted in a deferred adjudication probation under the Federal First Offender Act, 18 U.S.C. § 3607, were unlikely to present a substantial threat of committing subsequent serious crimes when, in contrast, it had no such confidence in how the various state schemes of deferred adjudication probation treated potentially dangerous offenders. Madriz-Alvarado, 383 F.3d at 332. The court concluded that Madriz did not have an equal protection claim in the application of 8 U.S.C. § 1101(a)(48)(A) to his deferred adjudication probation.

Here, Plaintiff argues that the law unfairly discriminates between aggravated felony convictions dated prior to November 29, 1990, and those occurring after November 29, 1990, the effective date of the Immigration Act of 1990. The mere fact that a law has an effective date is a rational exercise of power and does not violate the equal protection clause. If Plaintiff's reasoning were to prevail, few laws could overcome an equal protection challenge by those persons newly affected by the law.

Plaintiff also contends that if he is not permitted to naturalize because of his disqualifying conviction, such action would violate the U.S. Constitution's grant of plenary power to Congress to establish a "uniform Rule of Naturalization" after

15

the Ninth Circuit found that an expungement of a simple drug possession conviction was not a "conviction" under federal immigration law. Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). In light of this ruling, Plaintiff complains that any inconsistency between the circuit courts' interpretations of the immigration code's definition of "conviction," results in a violation of the U.S. Constitution, art. 1, §8, cl. 4 (the "Naturalization Clause").[28] Plaintiff fails to cite to any case law in support of this argument.

The Fifth Circuit has stated that this section of the Constitution merely requires that Congress make a single, federal body of laws on naturalization, and does not require that naturalization laws produce the same result in every state. Nehme v. INS, 252 F.3d 415, 428-29 (5th Cir. 2001). The court concludes that there is no violation of the uniformity requirement of the Naturalization Clause in the definition of "conviction."

The court also declines to find Plaintiff's conviction void under Texas law. Even if Plaintiff were successful in collaterally attacking that conviction under state law, convictions which are subsequently vacated remain valid for immigration purposes, even those convictions vacated "because of a defect in the underlying criminal proceeding." Dicipio v. Ashcroft, 369 F.3d 472, 474 (5th

---

[28] The Naturalization Clause states, "To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Constitution, art. 1, § 8, cl. 4.

Cir. 2004).

The court concludes that Plaintiff was convicted on January 9, 1991, of a disqualifying aggravated felony and thus cannot show the requisite "good moral character" necessary for naturalization. His application for naturalization was correctly denied.

## IV. Conclusion

In light of the foregoing, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

SIGNED this 26th day of April, 2005, in Houston, Texas.

_____
Nancy K. Johnson
United States Magistrate Judge